930 F.2d 1111
 AFIA/CIGNA WORLDWIDE, and American Express Co., Plaintiffs-Appellants,
v.
Marilyn C. FELKNER, Deputy Commissioner, Office of Workers'
Compensation Programs, and Wanda Sue Frazier,
Defendants-Appellees.
 No. 90-2339.
 United States Court of Appeals,
Fifth Circuit.
 May 10, 1991.
 
 Michael D. Williams, Kenneth G. Engerrand, Brown, Sims, Wise & White, Houston, Tex., for plaintiffs-appellants.
 Joshua T. Gillelan, Janet R. Dunlop, U.S. Dept. of Labor, Office of the Solicitor, Washington, D.C., Jack Shepherd, Chief, Asst. U.S. Atty., Houston, Tex., for Felkner.
 Stephen M. Vaughan, Mandell & Wright, Houston, Tex., for Frazier.
 Appeal from the United States District Court for the Southern District of Texas.
 Before GOLDBERG, JOLLY and WIENER, Circuit Judges.
 WIENER, Circuit Judge:
 
 
 1
 Plaintiffs-Appellants, American Express Company and its insurer, AFIA/CIGNA Worldwide, (collectively, AFIA/CIGNA), appeal the district court's dismissal of their suit to set aside an award of compensation made by Deputy Commissioner, Marilyn C. Felkner to claimant, Wanda Sue Frazier, Defendants-Appellees, for lack of subject matter jurisdiction under section 21(b) of the Longshoremen and Harbor Workers' Compensation Act, 33 U.S.C. Secs. 901-950, as incorporated in the Defense Base Act, 42 U.S.C. Secs. 1651-1654. Finding that dismissal of the suit was proper, we affirm.
 
 FACTS AND PROCEEDINGS BELOW
 
 2
 Frazier was employed by the American Express Company when she suffered an injury in the course of her employment at the Rhein-Main Air Force Base in West Germany. This injury caused temporary total disability from October 13, 1976, to December 3, 1980, and permanent total disability thereafter.
 
 
 3
 Frazier filed for workers' compensation under the Longshoremen and Harbor Workers' Compensation Act (LHWCA) as incorporated by the Defense Base Act (DBA). In July 1989, a compensation order was filed by Deputy Commissioner Felkner of the Eighth Compensation District of the United States Department of Labor awarding compensation to Frazier.
 
 
 4
 Purporting to comply with section 3(b) of the DBA, 42 U.S.C. Sec. 1653(b) (1982), AFIA/CIGNA sought judicial review of the deputy commissioner's order by filing suit in the United States District Court for the Southern District of Texas[1] to set aside the compensation order. As a precaution, they also sought administrative review by appealing the compensation order to the Benefits Review Board (BRB) under section 21(b) of the LHWCA, 33 U.S.C. Sec. 1921(b) (1982). Deputy Commissioner Felkner filed a motion to dismiss the district court suit on the ground that the district court lacked subject matter jurisdiction under section 3 of the DBA, insisting that exclusive jurisdiction for the initial appeal of the compensation order was with the Benefits Review Board. The district court agreed and granted the motion, dismissing the case for lack of subject matter jurisdiction.
 
 
 5
 AFIA/CIGNA timely appealed. To the best of our knowledge, AFIA/CIGNA's administrative appeal to the BRB has not yet been resolved.
 
 The Interplay Between the DBA and LHWCA
 
 6
 The DBA provides workers' compensation coverage for employees of American contractors engaged in construction related to military bases in foreign countries, and to foreign projects related to the national defense whether or not the project is located on a military base. See Sec. 1, 55 Stat. 622, 42 U.S.C. Sec. 1651; University of Rochester v. Hartman, 618 F.2d 170, 172, 173 n. 1 (2d Cir.1980). Section 1 of the DBA provides:
 
 
 7
 Except as herein modified, the provisions of the Longshoremen['s] ... Act, approved March 4, 1927 (44 Stat. 1424), as amended, shall apply in respect to the injury or death of any employee [covered by the Defense Base Act ...]
 
 
 8
 42 U.S.C. Sec. 1651(a) (1982); Pearce v. Director, Office of Workers' Compensation Programs, 603 F.2d 763, 765 (9th Cir.1979). Therefore, the compensation protocol provided by the LHWCA governs a claim under the DBA except to the extent the DBA specifically modifies a provision of the LHWCA. See Pearce, 603 F.2d at 766. If the DBA provides a specific modification then the provisions of the DBA control. Home Indemnity Co. v. Stillwell, 597 F.2d 87, 88-89 (6th Cir.), cert. denied, 444 U.S. 869, 100 S.Ct. 145, 62 L.Ed.2d 94 (1979).
 
 
 9
 Before the LHWCA was amended in 1972, section 19 of the LHWCA provided for the deputy commissioner initially to investigate and decide all claims for compensation.[2] In 1972, section 19 of the LHWCA was amended to transfer the deputy commissioner's hearing authority to an administrative law judge. See 33 U.S.C. Sec. 919 (c) & (d) (1982). That amendment bifurcated the various powers previously vested in the deputy commissioner, reserving the investigative and enforcement responsibilities to the deputy commissioners but transferring the adjudicative functions to administrative law judges. S.Rep. No. 92-1125, 92 Cong., 2d Sess. 13-14 (1972). Because the DBA contains no special provisions modifying the procedures set forth in LHWCA section 19, that section applies to DBA claims through section 1651(a)'s general incorporation provision.[3] Therefore, the procedures applicable to file a claim under the DBA and to obtain an initial determination of the claim are the very procedures set forth in the LHWCA for a claim arising under that Act.[4]
 
 
 10
 Before 1972, appeal of a deputy commissioner's decision under both the LHWCA and DBA was judicial only. Under LHWCA section 21(b) judicial review was by injunction proceedings "in the federal district court for the judicial district in which the injury occurred." Pub.L. No. 92-576, 86 Stat. 1251, 33 U.S.C. Sec. 921(b) (1970)(amended 1972). Because the DBA by definition applied to overseas sites, the injury or death in most if not all such cases could not possibly occur within any federal judicial district. See Pearce, 603 F.2d at 766. Therefore, Congress specifically modified the judicial review provisions under section 21(b) of the LHWCA by enacting section 3(b) of the DBA which states:
 
 
 11
 Judicial proceedings provided under sections 18 and 21 of the Longshoremen['s] ... Act in respect to a compensation order made pursuant to [the Defense Base Act] shall be instituted in the United States District Court of the judicial district wherein is located the office of the deputy commissioner whose compensation order is involved if his office is located in a judicial district, and if not ... [the proceeding] shall be instituted in the judicial district nearest the base at which the injury or death occurs.
 
 
 12
 42 U.S.C. Sec. 1653(b)(emphasis added).
 
 
 13
 Under the 1972 amendments to the LHWCA, section 21's procedures, calling for initial review of a compensation order to be judicial, was discarded in favor of the initial review being administrative, by the BRB, a specialized three-member board. See Amendments Sec. 15(a), 86 Stat. 1261, amending Longshoremen's Act Sec. 21(b) & (c) (1988). The 1972 amendments to the LHWCA also amended the provisions governing judicial review of compensation orders, making a final decision of the BRB reviewable not in federal district court but in the federal court of appeals for the circuit in which the injury occurred. See Sec. 21(c) LHWCA, 33 U.S.C. Sec. 921(c) (1982). Significant to our consideration, section 3 of the Defense Base Act, which provides for judicial review of final compensation orders in the federal district court, was not concurrently amended.
 
 ANALYSIS
 
 14
 The core issue on appeal is whether the 1972 Amendments to section 21 of the LHWCA, providing for initial review of compensation orders to be administrative with the BRB, apply to initial review of compensation orders under the DBA. After parsing the statutory language and analyzing the interrelationship of the LHWCA and the DBA, we conclude that the initial appeal of a compensation order issued pursuant to a claim under the DBA is to the Benefits Review Board as an administrative appeal under section 21(b) of the LHWCA, just as is the initial review of an order issued pursuant to a claim originating under the LHWCA. But following administrative review by the BRB, the judicial review provisions under these two statutory schemes diverge: following BRB review of a claim brought pursuant to the LHWCA, judicial review begins in the cognizant United States court of appeals; but, as unambiguously provided in section 3(b) of the DBA, judicial review of compensation orders under the DBA begins in the United States district court for the judicial district wherein is located the office of the deputy commissioner whose compensation order is to be reviewed. Therefore, in DBA cases, initial review of a compensation order is administrative to the BRB, and the BRB's decision is judicially reviewed by appeal to the appropriate district court.
 
 A.
 Initial Appeal to the BRB
 
 15
 AFIA/CIGNA argues that the 1972 amendments to section 21 of the LHWCA do not apply to the DBA because the review provisions of the LHWCA are inconsistent with the specific modifying provisions in section 3(b) of the DBA. AFIA/CIGNA contends that, under the plain wording of section 1653(b), review of compensation orders is in "the United States district court of the judicial district wherein is located the office of the deputy commissioner whose compensation order is involved...." 42 U.S.C. Sec. 1653(b). Therefore, concludes AFIA/CIGNA, review of a compensation order by the BRB is inconsistent with the plain language of a specific modifying provision of the DBA.
 
 
 16
 But AFIA/CIGNA misreads this provision, neglecting to recognize that the first word in section 1653(b)--"judicial"--modifies "proceedings," an observation that is crucial to proper construction of the DBA. Section 1653(b) of the DBA states in part:
 
 
 17
 Judicial proceedings provided under sections 18[33 U.S.C. Sec. 918] and 21 [33 U.S.C. Sec. 921] of the Longshoremen['s] ... Act in respect to a compensation order made pursuant to [the Defense Base Act] shall be instituted in the United States District Court of the judicial district wherein is located the office of the deputy commissioner whose compensation order is involved....
 
 
 18
 42 U.S.C. Sec. 1653(b)(emphasis added). Section 1653(b) addresses and modifies only the judicial proceedings provided in sections 18 and 21 of the LHWCA. Review of compensation orders by the BRB is an administrative proceeding, not a judicial one. No provision of the DBA addresses administrative review of a compensation order by the BRB; thus, because the DBA contains no specific modification of the LHWCA's post-1972 provision for administrative review, section 21(b) of the LHWCA, as amended,[5] applies to claims under the DBA.
 
 
 19
 Furthermore, requiring the BRB to review DBA compensation orders does not create any inconsistencies in, or disrupt, the administration of DBA claims. First, that requirement retains parallelism between the DBA and the LHWCA, at least for the first step of the appellate review process. Second, review by the BRB does not interfere with any of the judicial review provisions already in place under the DBA; it merely inserts another level of review for compensation orders issued pursuant to that Act.
 
 
 20
 When Congress amended the LHWCA in 1972, it did not specifically modify the DBA to proscribe review of compensation orders by the BRB. Because the DBA does not specifically modify LHWCA section 21(b)'s provision for BRB review, and because review by the BRB does not conflict with the administration of claims under the DBA, we hold that the 1972 amendments to the LHWCA which provide for administrative review of compensation orders by the BRB apply to claims arising under the DBA. The district court, therefore, did not err in dismissing AFIA/CIGNA's suit for judicial review of Felkner's compensation award to Frazier before that claim had been reviewed administratively by the BRB.
 
 B.
 Appeal of BRB Final Decisions
 
 21
 In the instant case, the district court stated its agreement with the Ninth Circuit's position in Pearce that, under section 921 of the LHWCA, the proper court to hear an appeal of a BRB decision reviewing a DBA claim would be the court of appeals rather than the district court. We disagree,[6] finding that in this case, the district court failed to follow the review protocol laid out by the plain language of section 3 of the DBA, and therefore erred in determining that judicial review of BRB decisions dealing with claims arising under the DBA would skip the district court and proceed directly to the appropriate court of appeals, as do appeals from the BRB's review of claims originating under the LHWCA.
 
 
 22
 True, section 21(c) of the LHWCA provides in part that
 
 
 23
 Any person adversely affected or aggrieved by a final order of the Board may obtain a review of that order in the United States court of appeals for the circuit in which the injury occurred ...
 
 
 24
 33 U.S.C. Sec. 921(c). It is likewise true that this section provides for judicial review of a compensation order, pursuant to the LHWCA, by the BRB. But as we noted previously, section 3 of the DBA modifies only the provisions for judicial proceedings found in section 21 of the LHWCA. Therefore, it is at the judicial review stage that the DBA, by its express terms, specifically deviates from the review protocol provided by the LHWCA. Thus, we look to the provisions of the DBA to determine the proper court for judicial review. See, e.g., Home Indemnity, 597 F.2d at 89 (if a provision of the DBA specifically modifies provision of LHWCA, that DBA provision controls).
 
 
 25
 Section 1653 is unambiguous in requiring that any judicial proceeding initiated to review a compensation order made pursuant to the DBA be conducted in the United States district court of the judicial district wherein the office of the deputy commissioner who issued the initial order is located. See Home Indemnity, 597 F.2d at 89. As the language of the DBA is free from ambiguity, jurisprudential modification of its plain statutory language would amount to judicial legislation. See Maine v. Thiboutot, 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980); Rawlins v. National Transp. Safety Board, 837 F.2d 1327, 1329 (5th Cir.1988).
 
 
 26
 As noted above, Congress did not amend the judicial review provisions of the DBA when it amended the LHWCA in 1972, leaving the language of section 3(b) of the DBA intact. Absent express legislative intent to the contrary, we are bound to interpret any unambiguous provision of the DBA according to its clear wording. See Alabama v. Marshall, 626 F.2d 366, 368-69 (5th Cir.1980), cert. denied, 452 U.S. 905, 101 S.Ct. 3029, 69 L.Ed.2d 405 (1981). Under the plain, unambiguous language of section 3 of the DBA, judicial review of a compensation order dealing with a claim arising under the DBA is to be initiated in the United States district court for the judicial district in which the office of the deputy commissioner whose compensation order is involved is located; or, if the deputy commissioner's office is not located in a judicial district, then in the United States district court for the judicial district closest to the site where the injury occurred. See 42 U.S.C. Sec. 1653(b). Clearly, judicial review of a BRB decision in a DBA case is to be initiated in the district court rather than in the court of appeals.[7] Thereafter, a party dissatisfied with the results in the district court has an additional appeal of right to the United States court of appeals for the circuit wherein lies the district court from which the appeal is taken. See 28 U.S.C. Sec. 1294; Pearce, 603 F.2d at 766.
 
 CONCLUSION
 
 27
 Under the current statutory scheme, compensation orders for claims arising under either the DBA or the LHWCA are first reviewed by the BRB. After that, further judicial reviews follow divergent paths depending on whether the claim originated under the DBA or the LHWCA. BRB determinations on claims originating under the LHWCA are appealed to the United States court of appeals for the circuit in which the claimant's injury occurred as provided in section 21(c) of the LHWCA, 33 U.S.C. Sec. 921(c). On the other hand, BRB determinations on claims originating under the DBA are appealed to the United States district court for the district in which the deputy commissioner's office is located as provided in section 3(b) of the DBA, 42 U.S.C. Sec. 1653(b). Appeal of a district court's decision regarding the BRB's review of a DBA claim lies with the court of appeals for the circuit in which that district court sits.
 
 
 28
 We refrain from speculating whether Congress made a conscious decision to send DBA compensation orders first to the BRB, then to the district court and finally to the court of appeals, or whether such result was inadvertent. We are satisfied that, when the DBA and the LHWCA are read in pari materia, that is precisely the administrative and judicial review route spelled out in the plain wording of those statutes.
 
 
 29
 While we recognize that taking this rather attenuated avenue to review DBA compensation orders may be cumbersome and duplicative, it is not our function to correct Congressional oversight, particularly when such oversight does not lead to impossible or absurd results. It is for Congress to eliminate any redundant steps insinuated by the 1972 amendments to the LHWCA. Until Congress so acts, we are bound to interpret the DBA according to its plain, unambiguous language.
 
 
 30
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Felkner's office is located within the geographical limits of the United States district court for the Southern District of Texas
 
 
 [2]
 Section 19 of the LHWCA provides the procedure with respect to claims for compensation including the procedures for filing a claim for compensation, time limits, the duties of the deputy commissioner in determining an award, the procedures the deputy commissioner must follow to investigate a claim, and the procedures he must follow to conduct a hearing on an award or on the rejection of a claim. 33 U.S.C. Sec. 919(a)-(h)
 
 
 [3]
 The DBA is a general reference statute that incorporates not only the version of the LHWCA in force at the time the DBA was enacted, but all subsequent LHWCA amendments as well. See Pearce, 603 F.2d at 767; Director, Office of Worker's Compensation Programs v. Peabody Coal Co., 554 F.2d 310, 322 (7th Cir.1977) ("When a statute adopts the general law on a given subject, the reference is construed to mean that the law is as it reads thereafter at any given time including amendments subsequent to the time of adoption.")
 AFIA/CIGNA argues that Congress specifically deleted language from the DBA that provided that the DBA incorporated the LHWCA as amended, "and as the same may be amended in hereafter," 55 Stat. 622, so that the clear implication is that Congress did not intend the DBA to incorporate subsequent amendments to the LHWCA. We disagree, finding that the intent behind this deletion is at best ambiguous. Whatever may have been Congress's unspoken intent, we find no indication in the legislative history of the DBA that Congress intended to restrict the DBA's application to the version of the LHWCA in force at the time the DBA was enacted.
 The DBA itself contains no substantive provisions: the entirety of the Act contains some procedural and definitional provisions specifically tailored to DBA claimants, but contains no provisions dealing with the substance of a claim under the DBA. All of the DBA's "substantive" provisions, and most of its procedural provisions, are found in the LHWCA. It is unavailing to argue, as does AFIA/CIGNA, that when Congress amended the "substance" of the DBA--the LHWCA--it intended to preclude those changes from ever applying to claims arising under the DBA.
 Therefore, after reviewing the plain wording of the statutes and the legislative history of the DBA, we find that the 1972 amendments to the LHWCA (as well as all other amendments) apply to claims arising under the DBA unless such amendments are inconsistent with the administration of claims under the DBA or conflict with one of the express modifying provisions set forth in the DBA.
 
 
 [4]
 One significant difference between the filing procedure of the DBA and that of the LHWCA concerns where to file the claim. The DBA specifically modifies section 19(a) of the LHWCA by providing different compensation districts for filing claims arising under the DBA. See 42 U.S.C. Sec. 1653(a)
 
 
 [5]
 See supra note 3
 
 
 [6]
 In disagreeing with the Ninth Circuit on this issue, we do not create a conflict between the circuits. The Sixth Circuit in Home Indemnity has already adopted a position in direct conflict with the one advanced by the Ninth Circuit in Pearce. We merely agree with the Sixth Circuit's reading of section 3(b) of the DBA
 
 
 [7]
 We note that if in DBA cases, we were to follow LHWCA Sec. 21(c)'s directive that BRB decisions are appealed to the court of appeals for the circuit in which injury occurred, we would essentially foreclose appellate review of BRB decisions because in all cases arising under the DBA, injury or death of the employee occurs outside the continental U.S. Therefore, under 921(c)'s scheme, no circuit court would have jurisdiction to hear the appeal. Thus, applying section 921(c)'s judicial review procedure would be inconsistent with the administration of claims under the DBA. Although we could follow Pearce to get around this conflict, see Pearce, 603 F.2d at 770, we decline to cross the line between interpretation and legislation as we perceive it, given the plain wording of the subject statutes